Kaplan, J.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

DEUTSCHE BANK, A.G.; DB U.S. FINANCIAL
MARKETS HOLDING CORP.; DEUTSCHE
BANK SECURITIES, INC.; BMY ACQUISITION
CORP.; BMY ACQUISITION LLC; BMY
STATUTORY TRUST; and FIRST UNION
NATIONAL BANK, n/k/a WELLS FARGO
BANK N.A., as trustee of BMY STATUTORY
TRUST,

        Defendants.

-------------------------------------------------------------------x

RECEIVED

JAN 0 3 2017

**JUDGE KAPLAN'S CHAMBERS**

14 Civ. 9669 (LAK)

ECF Case

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: _1-4-17_

## [~~PROPOSED~~] STIPULATION AND ORDER OF SETTLEMENT AND DISMISSAL

WHEREAS, the United States of America ("United States") commenced this action by

filing a complaint in this Court (the "Complaint") against Defendants Deutsche Bank, A.G. ("DB

AG"), DB U.S. Financial Markets Holding Corp. ("DBUSH"), and Deutsche Bank Securities,

Inc. ("DBSI") (collectively, "Deutsche Bank"), a shell company known as BMY Acquisition

Corporation ("BMY Corp."), and certain other parties;

WHEREAS, the United States has asserted certain civil claims against Deutsche Bank for fraudulent conveyance under New York Debtor & Creditor Law §§ 273-278 and for unjust enrichment;

WHEREAS, the United States alleges the following conduct in its complaint: the purchase of The Charter Corporation ("Charter") by DBUSH; the sale of Charter by DBUSH to BMY Statutory Trust; the liquidation of Charter; the sale by BMY Statutory Trust of approximately 3 million shares of Bristol-Myers Squibb Company common stock (the "Bristol-Myers shares") to DBSI as agent for DB AG; and BMY Corp.'s failure to pay its tax liability for its tax year ending April 30, 2001; and Deutsche Bank's failure to report taxable gain resulting from the sale of the Bristol-Myers shares on its federal tax returns (collectively the "Covered Conduct");

WHEREAS, the United States seeks damages and interest against Deutsche Bank under the New York Debtor & Creditor Law §§ 273-278 for fraudulent conveyance and unjust enrichment;

WHEREAS, the parties desire to reach a full and final settlement and compromise of the claims that the United States asserts against Deutsche Bank by entering into this stipulation of settlement (the "Stipulation");

NOW, THEREFORE, it is hereby ORDERED as follows:

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1340 and 1345, and 26 U.S.C. § 7402.

2.    Deutsche Bank admits, acknowledges, and accepts responsibility for the following facts:

    a.  On March 13, 2000, Deutsche Bank acquired Charter.

2

b.  Charter's principal asset was the Bristol-Myers shares.

c.  The Bristol-Myers shares had appreciated significantly in value since they were originally obtained by Charter. As a result, if Charter sold the Bristol-Myers shares, it would have incurred substantial federal taxable income.

d.  Between March 2000 and May 2000, Deutsche Bank negotiated certain transactions with third parties relating to the sale of Charter and the Bristol-Myers shares.

e.  To implement these transactions, one of the third parties created several new entities, including BMY Statutory Trust, BMY Acquisition LLC, and BMY Acquisition Corporation (collectively, "BMY"), in May 2000.

f.  Deutsche Bank knew that BMY had no material assets and no operating business.

g.  On May 18, 2000, the following transactions occurred (collectively, the "May 2000 Transaction"):

   i.  Deutsche Bank sold Charter to BMY.

   ii.  BMY liquidated Charter, such that BMY directly owned the Bristol-Myers shares.

   iii.  BMY then sold the Bristol-Myers shares to Deutsche Bank Securities Inc., as agent for Deutsche Bank, A.G.

h.  Each aspect of the May 2000 Transaction was pre-planned.

i.  BMY paid a price for Charter that was substantially higher than the value of Charter if the built-in tax liability associated with the appreciation of the Bristol-Myers shares had been accounted for in the purchase price.

j.  As a result of the May 2000 Transaction, BMY realized substantial taxable gain.

3

k.  Deutsche Bank knew or, had it made reasonable inquiries, would have known that BMY did not have legitimate tax losses to offset this gain.

l.  BMY reported the gain resulting from the May 2000 Transaction on its tax return for its tax year ending April 30, 2001, but claimed that no tax was due because the income was offset by unrelated foreign currency transaction losses.

m.  The claimed foreign currency transaction losses were attributable to a tax shelter known as a Currency Option Investment Strategy ("COINS") tax shelter.

   i.  Deutsche Bank participated in this COINS tax shelter.

   ii.  As Deutsche Bank admitted in 2010, the COINS shelter, in which it participated willfully and knowingly, was a fraudulent tax shelter, and it was unlawful for Deutsche Bank to have participated in the COINS tax shelter.

n.  IRS disallowed BMY's claimed foreign currency transaction losses and assessed BMY tens of millions of dollars of tax (plus interest and penalties) resulting from the sale of the Bristol-Myers shares.

o.  BMY has not paid the tax liability resulting from the sale of the Bristol-Myers shares.

p.  Deutsche Bank knew or should have known that as a result of the May 2000 Transaction, BMY lacked the funds necessary to pay the substantial taxes resulting from the sale of the Bristol-Myers shares.

q.  Deutsche Bank engaged in the May 2000 Transaction in order to avoid having to pay the built-in tax liability associated with the Bristol-Myers shares.

4

3. Within 30 days of the Effective Date (defined below), Deutsche Bank shall pay to the United States a total of $95,000,000 (the "Settlement Amount") by electronic funds transfer pursuant to written instructions that will be provided by the United States Attorney's Office for the Southern District of New York .

4. Subject to the exceptions in paragraph 5 (concerning excluded claims) below, and conditioned upon Deutsche Bank's full payment of the Settlement Amount, the United States (including the Internal Revenue Service or any other agency of the United States) releases Deutsche Bank together with its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners; the corporate successors and assigns of any of them (the "Released Entities") from any civil or administrative claim the United States has or may have for (i) the collection, assessment, or adjustment of any income tax (including any interest thereon and any penalties for failure to report or failure to pay such income tax) arising from the Covered Conduct or (ii) BMY's unpaid tax liability (including any interest thereon and any penalties for failure to report or failure to pay such income tax) resulting from the sale of the Bristol-Myers shares.

5. Notwithstanding the release provided in paragraph 4 of this Stipulation, or any other term of this Stipulation, the following claims of the United States are not released by this Stipulation:

     a. Any civil liability to the United States (or its agencies), including but not limited to any liability arising under Title 26, U.S. Code (Internal Revenue Code), for conduct other than the Covered Conduct;

     b. Any criminal liability;

5

c.     Except as expressly stated in this Stipulation, any administrative liability
       (other than (i) the collection, assessment, or adjustment of any income tax,
       including any interest thereon and any penalties for failure to report or failure
       to pay such income tax, arising from the Covered Conduct and (ii) BMY's
       unpaid tax liability, including any interest thereon and any penalties for failure
       to report or failure to pay such income tax, resulting from the sale of the
       Bristol-Myers shares), including the suspension and debarment rights of any
       federal agency;

d.     Any liability based upon such obligations as are created by this Stipulation;
       and

e.     Any liability to the United States of any individual or entity other than the
       Released Entities.

6.     Deutsche Bank shall be in default of this Stipulation if it fails to timely make the
payment set forth in paragraph 3. In the event of default, the United States will provide written
notice of the default, to be sent by first-class mail to the undersigned attorneys for Deutsche
Bank. In the event of default, the Settlement Amount shall be immediately due and payable, and
interest shall accrue at the rate of 7% per annum compounded daily on the remaining unpaid
principal balance, beginning seven (7) business days after delivery of the notice of default. If the
Settlement Amount, with all accrued interest, is not paid in full within seven (7) business days
after delivery of the notice of default, the United States may, at its option: (a) seek specific
performance of the Stipulation; (b) offset the remaining unpaid balance of the Settlement
Amount from any amounts due and owing Deutsche Bank by any department, agency or agent of
the United States at the time of default; (c) reinstate this lawsuit; or (d) exercise any other rights

6

granted by law, or under the terms of this Stipulation, or recognizable at common law or in equity. Deutsche Bank shall not contest any offset imposed or any collection action undertaken by the United States pursuant to this paragraph, either administratively or in any State or Federal court. In addition, Deutsche Bank shall pay the United States all reasonable costs of collection and enforcement under this paragraph, including attorney's fees and expenses. In the event that the United States opts to rescind this Stipulation pursuant to this paragraph, Deutsche Bank shall not plead, argue or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel or similar theories, to any claims which relate to the Covered Conduct, except to the extent those defenses were available on date of the filing of the initial complaint in this action.

7.     Deutsche Bank waives and will not assert any defenses it may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the United States Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the United States Constitution, this Stipulation bars a remedy sought in such criminal prosecution or administrative action.

8.     Nothing in this Stipulation constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue Code, Title 26 of the United States Code or New York State Tax Law.

9.     Deutsche Bank fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) which Deutsche Bank has asserted, could have asserted, or may assert in the future against the United States, its agencies, or officers, agents,

7

employees, and servants, related to the Covered Conduct, and the United States' investigation and prosecution thereof.

10.     This Stipulation is intended to be for the benefit of the parties only. The parties do not release any claims against any other person or entity, except as expressly provided in this Stipulation. Until the Settlement Amount is fully satisfied, Deutsche Bank shall continue to maintain custody of all documents and records of Deutsche Bank related to the Covered Conduct that are currently preserved as part of the ongoing litigation. Until the Settlement Amount is fully satisfied, the United States shall continue to maintain custody of all documents and records of the United States related to the Covered Conduct that are currently preserved as part of the ongoing litigation.

11.     Deutsche Bank represents and warrants that it has reviewed its financial situation, and that it is currently not insolvent within the meaning of 11 U.S.C. § 101(32), and that it reasonably believes that it shall remain solvent following the payment of the Settlement Amount. Further, the parties expressly warrant that, in evaluating whether to execute this Stipulation, they (i) have intended that the mutual promises, covenants and obligations set forth herein constitute a contemporaneous exchange for new value given to Deutsche Bank, within the meaning of 11 U.S.C. § 547(c)(1); and (ii) have concluded that these mutual promises, covenants and obligations do, in fact, constitute such a contemporaneous exchange. Further, the parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value which is not intended to hinder, delay or defraud any entity to which Deutsche Bank was or became indebted on or after the Effective Date of this Stipulation, all within the meaning of 11 U.S.C. § 548(a)(1).

8

12.     If, within 91 days of the Effective Date of this Stipulation or within 91 days of

any payment under this Stipulation, Deutsche Bank commences, or a third party commences, any

case, proceeding, or other action under any law relating to bankruptcy, insolvency,

reorganization or relief of debtors: (i) seeking to have any order for relief of Deutsche Bank's

debts; (ii) seeking to adjudicate Deutsche Bank as bankrupt or insolvent; or (iii) seeking

appointment of a receiver, trustee, custodian or other similar official for Deutsche Bank or for all

or any substantial part of their assets, then:

> a.     Deutsche Bank's obligations under this Stipulation shall not be avoided
>
> pursuant to 11 U.S.C. § 547, and Deutsche Bank shall not argue or otherwise take
>
> the position in any such case, proceeding or other action that: (i) Deutsche Bank's
>
> obligations under this Stipulation may be avoided under 11 U.S.C. § 547; (ii)
>
> Deutsche Bank was insolvent at the time this Stipulation was entered into, or
>
> became insolvent as a result of the payments made to the United States hereunder;
>
> or (iii) the mutual promises, covenants and obligations set forth in this Stipulation
>
> do not constitute a contemporaneous exchange for new value given to Deutsche
>
> Bank.
>
> b.     In the event that Deutsche Bank's obligations hereunder are avoided for
>
> any reason, including, but not limited to, through the exercise of a trustee's
>
> avoidance powers under the Bankruptcy Code, the United States, at its sole
>
> option, may rescind its agreement to this Stipulation, and bring any civil and/or
>
> administrative claim, action or proceeding against Deutsche Bank for the claims
>
> that would otherwise be covered by the release provided in paragraph 4, above.
>
> Deutsche Bank: (i) shall not contend that any such claims, actions or proceedings

9

brought by the United States are subject to an automatic stay pursuant to 11 U.S.C. § 362(a) as a result of the action, case or proceeding described in the first clause of this paragraph; (ii) shall not plead, argue or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel or similar theories, to any such civil or administrative claims, actions or proceedings which are brought by the United States within thirty (30) calendar days of written notification to Deutsche Bank that the releases herein have been rescinded pursuant to this paragraph, except to the extent such defenses were available on the date the initial complaint was filed in this action; and (iii) shall not contest the validity of a claim filed by the United States against Deutsche Bank in the amount of $95,000,000, and the United States may pursue its claims in the case, action or proceeding referenced in the first clause of this paragraph, as well as any other case, action, or proceeding.

     c.     Deutsche Bank's agreements in this paragraph are provided in exchange for valuable consideration provided in this Stipulation.

13.     The United States and Deutsche Bank shall each bear their own legal and other costs incurred in connection with this matter, including the preparation and performance of this Stipulation.

14.     This Stipulation is governed by the laws of the United States. The parties agree that the exclusive jurisdiction and venue for any dispute relating to this Stipulation is the United States District Court for the Southern District of New York.

10

15. For purposes of construction, this Stipulation shall be deemed to have been drafted by all parties to this Stipulation and shall not, therefore, be construed against any party for that reason in any subsequent dispute.

16. Any failure by a party to this Stipulation to insist upon the strict performance of any of the provisions of this Stipulation shall not be deemed a waiver of any of the provisions hereof, and such party, notwithstanding that failure, shall have the right thereafter to insist upon strict performance of any and all of the provisions of this Stipulation.

17. If any part of this Stipulation shall for any reason be found or held invalid or unenforceable by any court of competent jurisdiction, such invalidity or unenforceability shall not affect the remainder of this Stipulation, which shall survive and be construed as if such invalid or unenforceable part had not been contained herein.

18. This Stipulation constitutes the complete agreement between the parties. This Stipulation may not be amended, except by written consent of the parties.

19. The undersigned counsel represent and warrant that they are fully authorized to execute this Stipulation on behalf of the persons and entities indicated below.

20. This Stipulation may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same agreement. Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Stipulation.

21. This Stipulation is binding on Deutsche Bank's successors, transferees, heirs, and assigns.

22. Subject to the exceptions in paragraph 5, and in consideration of the obligations of Deutsche Bank in this Stipulation, and conditioned upon Deutsche Bank's full compliance with the terms of this Stipulation, including but not limited to timely full payment of the Settlement

11

Amount, the Complaint is dismissed with prejudice; provided, however, that the Court shall

retain jurisdiction over this Stipulation and each Party to the extent the obligations herein remain

unsatisfied by that Party.

23.     Any notices pursuant to this Stipulation shall be in writing and shall, unless

expressly provided otherwise herein, be given by hand delivery, express courier, or facsimile

transmission followed by electronic mail, and shall be addressed as follows:

> **TO THE UNITED STATES:**
> Robert William Yalen
> Christine S. Poscablo
> Natasha Waglow Teleanu
> Anthony J. Sun
> Assistant United States Attorneys
> United States Attorney's Office
> Southern District of New York
> 86 Chambers Street, 3rd Floor
> New York, New York 10007
> Telephone: (212) 637-2800
> Facsimile: (212) 637-2702
> E-mail: robert.yalen@usdoj.gov
>              christine.poscablo@usdoj.gov
>              natasha.teleanu@usdoj.gov
>              anthony.sun@usdoj.gov
>
> **TO DEUTSCHE BANK:**
> Scott Musoff
> Patrick Rideout
> Skadden, Arps, Slate, Meagher & Flom, LLP
> 4 Times Square
> New York, NY 10036
> Telephone: (202) 735-3000
> Facsimile: (202) 735-2000

Raj Madan
Nathan Wacker
Skadden, Arps, Slate, Meagher & Flom, LLP
1440 New York Ave, N.W.
Washington, DC 20005
Telephone: (212) 371-7000
Facsimile: (212) 393-5760

24.    The effective date of this Stipulation is the date upon which this Stipulation is

entered by this Court (the "Effective Date").

25.    Each party and signatory to this Stipulation represents that it freely and

voluntarily enters into this Stipulation without any degree of duress or compulsion.

Dated: December 23, 2016
New York, New York

For Plaintiff:

PREET BHARARA
United States Attorney for the
Southern District of New York

By:  _____
ROBERT WILLIAM YALEN
CHRISTINE S. POSCABLO
NATASHA W. TELEANU
ANTHONY J. SUN
Assistant United States Attorneys
86 Chambers Street, 3rd floor
New York, NY 10007
Telephone: (212) 637-2800
Facsimile: (212) 637-2702

For Deutsche Bank:

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

By:  _____
SCOTT MUSOFF
PATRICK RIDEOUT
4 Times Square
New York, NY 10036
Telephone: (202) 735-3000
Facsimile: (202) 735-2000

RAJ MADAN
NATHAN WACKER
1440 New York Ave, N.W.
Washington, DC 20005
Telephone: (212) 371-7000
Facsimile: (212) 393-5760

SO ORDERED:

HONORABLE LEWIS A. KAPLAN
UNITED STATES DISTRICT JUDGE

SO ORDERED

_____
LEWIS A. KAPLAN, USDJ

1/4/17

14